In The United States District Court For
The Western District of Pennsylvania

FILED

Jennifer A. Fedorek,

'06 OCT 16 P3:45

    Plaintiff

CLERK
U.S. DISTRICT COURT

v.

Civil Action
No. 05-186

Ronald Snyder, et. al.,

    Defendants

The Plaintiff hereby submits the following documents to the
court as evidence.

Dated: 10/4/06

Signed: Jennifer Ann Fedorek

Jennifer Ann Fedorek
451 Fullerton Avenue
Cambridge Springs, PA 16403

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jennifer Ann Fedorek,          )
                               )
            Plaintiff          )
                               )        Civil Action
v.                             )        No.  05-186 Erie
                               )
Ronald Snyder , et. al.,       )
                               )
            Defendants         )

### DEFENDANT CRAFT'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS

In accordance with Rule 33 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendant, Keoke Craft, answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on Plaintiff within 30 days of services of these interrogatories.

If you cannot answer the following (interrogatories in full, after excercising due diligence to secure the information to do so, state and answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes

1.)   What was your Post Order on May 14, 2005?

      **ANSWER:   Floater.**

2.)   How many attempts were made to escort the Plaintiff to her visit?

      **ANSWER:   Two.**

3.)   Was there another CO. available to escort the Plaintiff to her visit and why or why not?

      **ANSWER:   No.  The only other female correctional officer on duty at the time was assigned to visitation.**

4.)   How many times had you escorted the Plaintiff from the Holding Cell to her visit proir to May 14, 2005?

      **ANSWER:   None.**

5.)    What authority to you have over housing of inmates within VCP?

    **ANSWER:    None.**

6.)    What is the purpose and use of the Holding Cells?

    **ANSWER:    Holding cells are used for a number of purposes, including suicide watch, lockup for female inmates, detoxification, administrative segregation, flight risk and discipline.**

7.)    How long does an inmate ordinarily reside in a Holding Cell?

    **ANSWER:    As long as the circumstances require it.**

8.)    How many female CO's were on duty (including yourself) on second shift May 14, 2005?

    **ANSWER:    Two.**

9.)    How often are Inmate Needs Reassessment Forms and Custody Reassessment Scales made on an inmate and would they be made under special circumstances?

    **ANSWER:    At least every 60 days.  Reassessments may be made with greater frequency if the circumstances suggest that they should.  See the document stamped VCP 190 and produced to you on 7-10-06.**

# Venango County Sheriff's Office
## STATEMENT FORM

☐ WITNESS
☐ VICTIM

| | |
|---|---|
| 1. Name No Xeelee Craft | 2. Incident No.: |
| 3. Address: 1186 Elk St Fkln | Telephone: 42-9629 |
| 4. Location: Venango County Jail | 5. Date/Day: 14 May 05 SAT | 6. Time: 1900 HRS |
| 7. Officer's Name/Signature/Badge No.: Xeelee Craft | 8. Page No. - Initials: 1 of 1  JFO |

**9. Statement:**

On the above date and approx. time, this CO was getting inmate Fedorek to take to visitation. Inmate became argumentative stating that she refused to wear handcuffs. This CO stated that if she wanted a visit she had to be cuffed. CO Buchanan also spoke to her & told her that she must wear them to go to her visit. Fedorek then allowed this CO to put the cuffs on her & this CO explained that any more acting out would result in a loss of visitation. This CO then began escorting Fedorek to visitation. Outsd. of the elevator this CO began telling Fedorek that she would remove the cuffs before she entered her visit, but Inmate Fedorek became verbal with this CO telling her/me not to speak to her. This CO then told Fedorek not to speak to her in that tone of voice & Fedorek continued to get louder and to flail her arms. I had CO then told Fedorek that she was not getting her visit & called for backup b/c of Fedorek's heightened level of aggression. Fedorek was escorted to receiving by this CO & CO Martin. Fedorek pulled away from this CO so this CO placed her against the wall. Fedorek continued to struggle & pull away, so this CO placed her upper torso over the counter until her cell was opened.

VIC

**\*NOTICE\***
Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the third degree if he/she makes a written false statement which he/she does not believe to be true.

| 10. SIGNATURE  No K. Craft  VCP 000000010 | Date: 14 May 05 |
|---|---|

Exhibit C

booking

storage

strip room

"Shower"

elevator

kitchen

4

3

files

2

1

Holding Cells

waiting

desk

control room

camera

men's work release

G-Block

A

bench

camera

sally port

chapel

restroom

chief deputy

warden

office

*Exhibit* P 1

# COUNTY OF VENANGO

☒ **Misconduct Report**          ☐ **Other**

| Number | Name | Misconduct Time | Misconduct Date | Date of Report |
|---|---|---|---|---|
| 25-0514010 | FEDOREK, JENNIFER | 1555 hrs. | 14 MAY 05 | 14 MAY 05 |

| Quarters | Assignment | RECEIVING **Place of Misconduct** |
|---|---|---|
| H/C #2 | HOLD CELL #2 | ELEVATOR OUTSIDE KITCHEN |

## OTHER INMATES OR STAFF INVOLVED OR WITNESSES ( CHECK I OR W)

| Number | Name | I | W | Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | FEDOREK, J. | X | | | CO MASON | | X |
| | CO Craft | | X | | CO Buchanan | | X |
| | CO Struthers | | X | | Mike Meitos | | X |

## Misconduct  Charge or other Action

REFUSING TO OBEY AN ORDER          REPEATED CLASS II MISCOND
USING ABUSIVE OR OBSCENE LANG.     VIOL: OF RULE NOT SPECIFIED

## Staff Member's Version

ON THE ABOVE DATE AND APPROX. TIME, THIS CO WAS GETTING INMATE FEDOREK TO TAKE TO VISITS. INMATE FEDOREK BECAME ARGUMENTATIVE STATING THAT SHE REFUSED TO WEAR HANDCUFFS THIS CO STATED THAT IF SHE WANTED HER VISIT SHE HAD TO HAVE THEM ON. THIS CO THEN PLACED THE CUFFS ON INMATE FEDOREK AND SHE BECAME VERBAL AGAIN DEMANDING TO SEE THE O.I.C. (BUCHANAN) CO BUCHANAN WAS OUTSIDE OF THE KITCHEN AND SPOKE TO FEDOREK. HOWEVER SHE CONTINUED TO ESCALATE AND WAS INCREASINGLY VERBAL AND AGITATED. THIS CO THEN ESCORTED FEDOREK BACK TO RECEIVING B/C OF HER CONTINUOUS REFUSAL TO COMPLY WITH DIRECT ORDERS GIVEN BY THIS CO.

## Immediate Action taken and Reason

VISITATION DENIED          WARDEN NOTIFIED
MISCONDUCT WRITTEN

| Reporting Staff member Signature and Title | Action Reviewed and Approved by Ranking C.O. on duty  Signature and Title |
|---|---|
| CO Craft #47 | C/O Andres 036 |

| Date and Time Inmate given copy | | Misconduct Category | Signature of Person serving Notice |
|---|---|---|---|
| **Date** 5/14/05 | **Time** 2030 | ☐ Class 1    ☒ Class 2 | CO Buchanan #75 |

| Hearing Date | Hearing Time | Location of Hearing | Forms given to Inmate |
|---|---|---|---|
| 5-18-05 | 1050 Hrs | Chapel | ☒ Request for Witnesses ☒ Inmate's Version |

## Notice to Inmate

You are scheduled for a hearing on this allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish, and anything you say will be used against you both at the hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee may hold your silence against you, but they must have some other evidence besides your silence in order to find you guilty. If you indicate that you wish to remain silent, you will be asked no further questions.

VCP_000000275

Copy- Inmate Record          Copy- Warden's Office          Copy- To Inmate

# COUNTY OF VENANGO

☑ Misconduct Report        ☐ Other

| Number | Name | Misconduct Time | Misconduct Date | Date of Report |
|---|---|---|---|---|
| 05-054210 | FEDOREK, JENNIFER | | | |

| Quarters | Assignment | Place of Misconduct |
|---|---|---|
| | | |

## OTHER INMATES OR STAFF INVOLVED OR WITNESSES ( CHECK I OR W)

| Number | Name | I | W | Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Misconduct Charge or other Action**

**Staff Member's Version**

AT THAT TIME OIC BUCHANAN TOLD FEDOREK THAT
ALL INMATES IN H/C MUST WEAR HANDCUFFS AND IF
SHE COMPLIED HE WOULD ALLOW HER A VISIT. INMATE
FEDOREK AGREED. THIS CO THEN TOLD HER THAT IF
SHE ACTED OUT IN ANY WAY WHILE BEING TAKEN
TO VISITATION SHE WOULD BE RETURNED TO HER
CELL. THIS CO THEN ESCORTED INMATE FEDOREK TO
THE ELEVATOR AND ~~RETURNED TO CELLBLOCK~~ NOTICING THAT
FEDOREK WAS ~~VERY~~ UPSET B/C SHE HAD TO WEAR
CUFFS DURING A VISIT W/ HER DAUGHTER, TRIED
TO TELL HER THAT THIS CO WOULD REMOVE THE
CUFFS BEFORE SHE ENTERED VISITATION, BUT

**Immediate Action taken and Reason**

| Reporting Staff member Signature and Title | Action Reviewed and Approved by Ranking C.O. on duty  Signature and Title |
|---|---|
| CO Craft #47 | CO Andres 036 |

| Date and Time Inmate given copy | | Misconduct Category | | Signature of Person serving Notice |
|---|---|---|---|---|
| **Date** 5/14/05 | **Time** 2030 | ☑ Class 1 | ☑ Class 2 | CO Buchanan #4 |

| Hearing Date | Hearing Time | Location of Hearing | Forms given to Inmate |
|---|---|---|---|
| 5-18-05 | 1050 Hrs | Chapel | ☑ Request for Witnesses ☑ Inmate's Version |

## Notice to Inmate

You are scheduled for a hearing on this allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish, and anything you say will be used against you both at the hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee may hold your silence against you, but they must have some other evidence besides your silence in order to find you guilty. If you indicate that you wish to remain silent, you will be asked no further questions.

VCP_000000276

| Copy- Inmate Record | Copy- Warden's Office | Copy- To Inmate |
|---|---|---|

# COUNTY OF VENANGO

☒ **Misconduct Report**       ❑ **Other**

| Number | Name | Misconduct Time | Misconduct Date | Date of Report |
|---|---|---|---|---|
| 050514210 | FEDOREK JENNIFER | | | |

| Quarters | Assignment | Place of Misconduct |
|---|---|---|
| | | |

## OTHER INMATES OR STAFF INVOLVED OR WITNESSES ( CHECK I OR W)

| Number | Name | I | W | Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Misconduct  Charge or other Action**


**Staff Member's Version**

Inmate FEDOREK BEGAN RAISING HER VOICE TELLING THIS CO NOT TO SPEAK TO HER. THIS CO THEN TOLD FEDOREK NOT TO SPEAK TO HER IN THAT TONE OF VOICE AND FEDOREK CONTINUED YELLING AT THIS CO NOT TO SPEAK TO HER WHILE FLAILING HER ARMS. THIS CO THEN CALLED FOR BACKUP AT THE ELEVATOR. CO MASON ARRIVED AND HE AND THIS CO ESCORTED HER BACK TO ~~THE~~ RECEIVING. FEDOREK CONTINUED BEING VERBAL AND JERKED AWAY FROM THIS CO. THIS CO THEN PLACED HER AGAINST THE WALL AND FEDOREK CONTINED STRUGGLING AND BEING VERBAL TOWARD THIS CO. AT THAT TIME,

**Immediate Action taken and Reason**


| Reporting Staff member Signature and Title | Action Reviewed and Approved by Ranking C.O. on duty  Signature and Title |
|---|---|
| CO Lick #47 | CO Buchana #75 |

| Date and Time Inmate given copy | Misconduct Category | Signature of Person serving Notice |
|---|---|---|
| **Date** 5/14/05   **Time** 2030 | ☒ Class 1    ☒ Class 2 | CO Andris 036 |

| Hearing Date | Hearing Time | Location of Hearing | Forms given to Inmate |
|---|---|---|---|
| 5-18-05 | 1050 Hrs | Chapel | ☒ Request for Witnesses ☒ Inmate's Version |

## Notice to Inmate

You are scheduled for a hearing on this allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish, and anything you say will be used against you both at the hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee may hold your silence against you, but they must have some other evidence besides your silence in order to find you guilty. If you indicate that you wish to remain silent, you will be asked no further questions.

VCP_000000273

| Copy- Inmate Record | Copy- Warden's Office | Copy- To Inmate |
|---|---|---|

P4

# COUNTY OF VENANGO

☑ **Misconduct Report**        ☐ **Other**

| Number 05-0514-20 | Name FEDOREK, JENNIFER | Misconduct Time | Misconduct Date | Date of Report |
|---|---|---|---|---|
| **Quarters** | **Assignment** | | **Place of Misconduct** | |

## OTHER INMATES OR STAFF INVOLVED OR WITNESSES ( CHECK I OR W)

| Number | Name | I | W | Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

**Misconduct  Charge or other Action**

**Staff Member's Version**

THIS CO placed Fedoreks under forced over the counter until her cell was opened. She was then secured in her cell.

**Immediate Action taken and Reason**

| Reporting Staff member Signature and Title | Action Reviewed and Approved by Ranking C.O. on duty  Signature and Title |
|---|---|
| CO __ #47 | CO Bukaw __ 75 |

| Date and Time Inmate given copy | | Misconduct Category | Signature of Person serving Notice |
|---|---|---|---|
| **Date** 5/14/05 | **Time** 2030 | ☑ Class 1    ☑ Class 2 | C/O Andres 036 |

| Hearing Date 5-18-05 | Hearing Time 1050 Hrs | Location of Hearing Chapel | Forms given to Inmate ☑ Request for Witnesses ☑ Inmate's Version |
|---|---|---|---|

### Notice to Inmate

You are scheduled for a hearing on this allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish, and anything you say will be used against you both at the hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee may hold your silence against you, but they must have some other evidence besides your silence in order to find you guilty. If you indicate that you wish to remain silent, you will be asked no further questions.

VCP_000000274

# Venango County Prison
# Report of Extraordinary Occurrence



| | | | |
|---|---|---|---|
| **To:** | Warden Snyder | **Date:** | **14MAY05** |
| **From:** | C.O. Mason | **Time:** | **1850hrs** |
| **Title:** | Booking Officer | **Area:** | **H/C #2** |
| **Date:** | 14MAY05 | **Occurrence:** | **Medical** |
| **Signature:** | | | |

| **Inmates Involved:** | **Staff Involved:** Name & Title | **Witnesses:** |
|---|---|---|
| J. Fedorek | C.O. Mason | |

**Actions Taken:**
OIC notified
Inmate's wrists looked at.
Inmate given an d ice pack and offered Tylenol

**Description of Incident, In Detail: (Use other Side if Necessary)**
After an incident between the inmate Fedorek and a C.O. Craft, inmate Fedorek stated that her wrists where hurting. I, C.O. Mason, asked her to move her wrist for me, She stated that she could not. She showed me her wrist with her palm turned away from me, I asked her if I could see the other side, she twisted her hand so that I could see the other side. The inmate's wrists where red but not swollen, not black and blue, and no deformities where seen. I offered the inmate an ice pack and some Tylenol, She refused them. Later inmate Kizer yelled to me (I was in the booking office) that inmate Fedorek wanted the on-call doctor to look at her wrists, I stated that her wrists where not swollen or broken that I would get her some Tylenol and an ice pack. She took the ice pack. I then informed the OIC of what had occurred and my actions. OIC Buchanan then also looked at her wrists. .

7/6/2006

........ County Prison
**Jail Incident Report**

Exibit
F

Incident

## Inmate Information

Name: FEDOREK, JENNIFER A                    Booking #: 04-1326        Permanent #: 0

Sex: Female        Race: WHITE        Date of Birth: 9/5/1978 00:00  Booking Date: 12/4/2004 2

## Incident Information

| | | | |
|---|---|---|---|
| Incident Date and Time: | 5/14/2005 21:01:13 | Document Locator No. : | |
| Incident Start Date / Time: | 5/14/2005 18:50:00 | Incident Shift: | 2 |
| Incident End Date / Time: | 5/14/2005 21:00:00 | Location: | OTHERS |
| Incident Type: | Medical | Reporting Officer: | MASON, MATTI |
| Violation of Law?: | | Warrant: | |

Charges:

### Description:

After an incident with a C.O., Inmate stated that her wrists hurt. Her wrists wher red but not swollen. Inmate given OIC called on-call doctor. On-call doctor stated to give her ice packs

## Witnesses to Incident

/6/2006

**Venango County Prison**
**Jail Incident Report - Impairments**

Inmate Information

Name: FEDOREK, JENNIFER A

Impairment Information

| | |
|---|---|
| **Type:** | Injury |
| **Description:** | Bruised wrists. |
| **Recipient:** | |
| **Treated At:** | VCP |

/6/2006

# Venango County Prison
## Jail Incident Report - Actions Taken

┌─ ate Information ─

me: FEDOREK, JENNIFER A          Supervisor Approving: _____

                                 Date Approved: _____

┌─ Actions Taken Information ─

| | |
|---|---|
| **Type:** | wrists examined |
| **Description:** | Wrists where red bur not swollen or disfigured.Inmate could twist hand |
| **Type:** | OIC notified |
| **Description:** | OIC Buchanan also examined wrists |
| **Type:** | doctor notified |
| **Description:** | On-call doctor stated to give ice, tylenol, and monitor fro swelling. |
| **Type:** | Pictures taken |
| **Description:** | Deputy O'Neil took pictures of wrists |

7/6/2006

EXHIBIT G

| __Accused | **Venango County Sheriff's Office** | __Victim |
|---|---|---|
| | **STATEMENT FORM** | __Witness |

1. Name: Mason,. Matthew W.      2. Incident No:

3. Address: 1136 Elk St      Telephone: (814) 432-9140

4. Location: Venango County Prison      5. Date/Day 14MAY05      6. Time: 1900hrs

7. Officer's Name/Signature/Badge No.: O'Neil #5      8. Page No.-Initials 1 of 1

9. Statement:

I, C.O. Mason was in booking when C.O. Craft called for back-up on the ground floor elevator. I ran to the elevator at which time I saw C.O. Craft standing in the elevator door and inmate J. Fedorek standing in the far right corner of the Elevator. C.O. Craft was telling at inmate Fedorek to get out of the elevator and inmate Fedorek was refusing to do so. C.O. Craft and I grabbed inmate Fedorek and escorted her to the receiving area. Inmate Fedorek pulled away from C.O. Craft. C.O. Craft pushed the inmate into the wall at which time the inmate attempted to pull away again, C.O. Craft then pushed the inmate into the counter and used her body weight to hold the inmate until the cell door was opened and the inmate was in the cell.

**"NOTICE"**

Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the Third degree if he/she makes a written false statement which he/she does not believe to be true.

10. SIGNATURE:      Date:

# Venango County Prison
## Report of Extraordinary Occurrence

EXIBIT
H

**To:**
**From:** CO Buchanan
**Title:** Corrections officier
**Date:** 14 MAY 2005
**Signature:** CO Buchanan #76

**Date:** 14 May 2005
**Time:** 1800
**Area:** Recieving / Elevator
**Occurrence:** unusual

**Inmates Involved:**

Federik, Jennifer

**Staff Involved:**
**Name & Title**

CO Kraft
CO Mason
CO Struthers
CO Buchanan

**Witnesses:**

Meitus, Michael (cook)

**Actions Taken:**

Inmate with strauned and put into her cell.
Warden notified, Sheriffs Dept notified

**Description of Incident, In Detail: (Use other Side if Necessary)**

ON the above date approx. time this OIC co Buchanan was assiting CO Craft in recieving by explaining to inmate Federik that she had to wear the hand cuffs to visitation. Inmate was un compliant and argumentive about being cuffed it was explained to her that this was the only way she would get her visits inmate agreed at this point and let CO Craft hand Cuff her 5 conds later radio call for Back up in the Elevator was transmitted This CO Responded to Ground flr Elevator entrance to find CO Craft struggling with inmate Federick. Inmate was resisting and yelling protesting this CO and CO mason assisted CO Craft with the least amount of force nessery to place inmate Federick back into her cell.

Exibit
I

# ON-CALL DOCTER
# NOTIFICATION FORM

### VENANGO COUNTY PRISON NURSE

INMATE'S NAME: *Feobrek, Jennifer*                DATE: _____

DOCTOR ON CALL: *Dr. Anderson*

REASON DOCTOR CALLED:
Complained of wrist (P) in both wrist from
Struggling w/ a co while handcuffed. Both
wrist slightly bruised but had full
range of motion in Both wrist

ACTION ORDERED BY DOCTOR:
give Tylenol and Ice. As needed
Monitor for any swelling

SIGNATURE OF O.I.C. OR C.O. WHO SPOKE WITH THE DOCTOR:
*CO Buchanan #75*

### (PLEASE PLACE IN THE MEDICAL FILE WHEN COMPLETED)

VCP 000000257

Exibit J

| __Accused | **Venango County Sheriff's Office** | __ Victim |
|---|---|---|
| | **STATEMENT FORM** | X Witness |

| | |
|---|---|
| 1. Name: W. STRUTHERS | 2. Incident No: So - 489 - 05 |

| | |
|---|---|
| 3. Address: VCP | Telephone: 432-0629 |

| | | |
|---|---|---|
| 4. Location: RECEIVING | 5. Date/Day 05/14/2005 | 6. Time: 2020 HRS. |

| | |
|---|---|
| 7. Officer's Name/Signature/Badge No.: 061 | 8. Pane No.-Initials: |

9. Statement:

At 1755 hrs. I was walking down the lower corridor toward booking. I was in route to strip the
Afternoon Kitchen Crew who were in booking waiting for me with OIC Buchanan. As the slider by
Gate #7 opened I saw C.O. Craft and Inmate Fedorek approaching the elevator. They were having a
loud discussion about the hand cuffs Inmate Fedorek was restrained in. Inmate Fedorek did not
want to wear the restraints to her visit she was going to. C.O. Craft told her to go back to her cell. I
Went into Booking and OIC Buchanan left Booking thru Gate # 4 to talk to C.O. Craft and Inmate
Fedorek. As I heard the slider by Gate #3 open and close I took the Afternoon Kitchen Crew into the
hallway by the Property Room. OIC Buchanan and I began to strip search the inmates from the
kitchen. After a very short time we heard a call for "back-up" in the elevator. OIC Buchanan
responded to the call and I remained with the inmates. From the Changing Room door I watched
C.O. Craft escort Inmate Fedorek to HC-2. C.O. Craft then pushed Inmate Fedorek face first against
The wall by HC-2 door. She the spun Inmate Fedorek to the receiving counter in a swift move.
Someone opened HC-2's door and C.O. Craft put Inmate Fedorek into the cell. I reminded C.O. Craft
Inmate Fedorek still had hand cuffs on. C.O. Craft responded, "I'll take them off later" and left the
Immediate area. Inmate Fedorek began to hit the upper cell window with the hand cuffs. C.O. Mason
talked to Inmate Fedorek and removed the restraints thru the pie hole door. OIC Buchanan returned
to assist me with the Afternoon Kitchen Crew. At approximately 1824 hrs. I viewed Inmate Fedoreks
wrists and right fore arm. Both her wrists were bruised and her right forearm also had a bruise on it.
C.O. Mason provided first aide for her.

**"NOTICE"**

Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the
Third degree if he/she makes a written false statement which he/she does not believe to be true.

| 10. SIGNATURE: | Date: |
|---|---|
| W. Struthers   061 | 5/14/05 |

VCP 000000294

EXIBIT K

__Accused                **Venango County Sheriff's Office**                    __tim

**STATEMENT FORM**                                    X Witness

1. Name: Sheila Kizer                          | 2. Incident No: So-489-05

3. Address: 124 Washington Ave        | Telephone:

4. Location: Venango Co. Jail Booking   | 5. Date/Day 14 May 05 | 6. Time: 1950 hrs

7. Officer's Name/Signature/Badge No.: J. ONeil #5    | 8. Page No.-Initials: 1/1 JFO

9. Statement:

I heard Jen yelling so I got up off my Buck and I seen co Kraft Pushing Jen Back Into Revicing. and Jen yelling and tell her She Did not Do any thing. then She push her into the wall and then into the Desk and while she was up against the Desk She put all of her wright on Jen. then when the Door to the cell opened She pushed her in the cell. And she asked for her hand cuffs off and Kraft told her no. And when thay took off the hand cuff thay were so tiet. thay left Marks.

**"NOTICE"**

Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the Third degree if he/she makes a written false statement which he/she does not believe to be true.

5-14-05

10. SIGNATURE:                                    Date:

EXHIBIT I

ON MAY 14, 05 I MIKE MIETUS WHO WORKS IN THE KITCHEN AT VENANGO COUNTY JAIL WAS LEAVING WORK AT APX, 6:30 PM WHEN I OBSERVED INMATE FEDOREK YELLEING VERY LOUDLY AT CO. CRAFT NOT TO TALK TO HER. WHEN THEY GOT TO THE ELEVATOR CO. CRAFT ASK HER IN A CALM VOICE TO PLEASE LOWER YOUR VOICE. AGAINE INMATE FEDOREK SCREAMED AT HER NOT TO TALK TO HER. I WAS LEAVING THE KITCHEN AND CENTERAL CONTROL OPENED THE DOOR TO THE HALL WAY AND. I THEN PROCEEDED UP THE HALL. I HAVE NO KNOWLAGE OF WHAT HAPPENED AFTER THAT.

mike mietus

mike mietus

8-24-06

VCP 000000298

# SUMMARY

ON SATURDAY 14 MAY 05 I DEPUTY O'NEIL #5 OF THE VENANGO COUNTY SHERIFF'S OFFICE AND THE WRITER OF THIS REPORT WAS ASSIGNED TO THE ON-CALL DUTY. I RECEIVED A PAGE FROM THE VENANGO COUNTY JAIL AT APPROXIMATELY 1825 HOURS STATING THAT THERE HAD BEEN AN INCIDENT BETWEEN A CORRECTIONAL OFFICER AND AN INMATE AND THAT THERE WERE NO INJURIES. THE INCIDENT OCCURRED APPROXIMATELY 1800 HOURS 14 MAY 05. UPON ARRIVING AT THE VENANGO COUNTY JAIL APPROXIMATELY 1845 HOURS I SPOKE WITH CO. MASON WHO STATED THAT I NEEDED TO SPEAK WITH CO. KRAFT ABOUT THE INCIDENT WITH JENNIFER FEDOREK. CO. MASON ALSO GAVE A WRITTEN STATEMENT AT APPROXIMATELY 1855 HOURS. (SEE ATTACHED). I THEN SPOKE WITH CO. KRAFT APPROXIMATELY 1900 HOURS WHO STATED THAT SHE WAS TAKING INMATE FEDOREK TO VISITATION WHEN INMATE FEDOREK BECAME VERBALLY UNCOOPERATIVE ABOUT WEARING HANDCUFFS TO THE VISIT. OIC. CO. BUCHANAN, WHO ALSO GAVE A WRITTEN STATEMENT (SEE ATTACHED), STEPPED IN AND TOLD INMATE FEDOREK THAT SHE HAD TO WEAR THE HANDCUFFS TO THE VISIT OR SHE WOULD NOT GET HER VISIT. INMATE FEDOREK THEN AGREED TO WEAR THE HANDCUFFS. WHILE IN THE ELEVATOR INMATE FEDOREK CONTINUED TO BE VERBALLY UNCOOPERATIVE AND AT SOME POINT BEGAN TO FLAIL HER ARMS AT CO. KRAFT. AT NO TIME DID ANY STIRKE CONNECT FROM INMATE FEDOREK TO CO. KRAFT. CO. KRAFT THEN CALLED FOR BACK UP. OIC CO BUCHANAN AND CO MASON RESPONDED TO THE ELEVATOR. CO KRAFT THEN ESCORTED INMATE FEDOREK BACK TOWARDS HER CELL (HOLDING CELL 2). INMATE FEDOREK TRIED TO PULL AWAY FROM CO. KRAFT AND CO KRAFT PUSHED HER INTO THE WALL AND THEN OVER TO THE COUNTER UNTIL INMATE FEDOREK COULD BE PUT IN HER CELL. INMATE FEDOREK RECEIVED MINOR BRUISES ON HER ARMS AS A RESULT OF RESISTING RESTRAINT BY CO. KRAFT. INMATE FEDOREK COMPLAINED OF WRIST PAIN AND WAS TREATED BY JAIL PERSONNEL. CO KRAFT ALONG WITH CO STRUTHERS, INMATE SHEILA KIZER, AND INMATE JENNIFER FEDOREK ALL GAVE WRITTEN STATEMENTS. (SEE ATTACHED) INMATE SHEILA KIZER AND INMATE JENNIFER FEDOREK WERE READ THEIR MIRANDA RIGHTS BEFORE ANY QUESTIONING AND STATEMENTS WERE GIVEN. SEE ATTACHED).

UPON THE COMPLETION OF THIS INVESTIGATION IT IS THIS OFFICERS OPINION THE THIS INCIDENT WILL BE HANDLED IN HOUSE AND NO CHARGES WILL BE FILED.

REPORT MADE BY: DEPUTY JUSTIN O'NEIL #5          DATE: 16 MAY 05

Case Filed ___Yes ___No

THIS CASE IS

Cleared by arrest _____          Unfounded ___ _____
Inactive _____ Other Citation Issued  ACTIVE ___ _____

REVIEWED BY: _____ TITLE: _CHIEF_ DATE: _16 MAY '05_
NAME OF SUPERVISOR



Exibit N





1c MAY 05          SO-489-05
2008 HRS
JENNIFER FEDOREK          3 OF 3

14 MAY 05          SO-489-05
2008 HRS
JENNIFER FEDOREK          2 OF 3



14 MAY 05          SO-489-05
2008 HRS
JENNIFER FEDOREK          1 OF 3

VCP  297

☐ WITNESS
☐ VICTIM

**Venango County Sheriff's Office**
**STATEMENT FORM**

| 1. Name  JENNIFER FEDOREK | 2. Incident No.: 50-489-05 |
| 3. Address: 108 CLEARFIELD ST  OIL CITY PA 16301    Telephone: (814) 677-5339 | |
| 4. Location: VENANGO CO. JAIL  BOOKING | 5. Date/Day  14 MAY 05 | 6. Time: 19 17 HRS |
| 7. Officer's Name/Signature/Badge No.: [signature] #5 | 8. Page No. - Initials: 1/2  JFO |

9. Statement:

I WAS CALLED AT 5 TILL 6 PM BY CO. KRAFT TO GET READY FOR A VISIT. UPON EXITING MY CELL CO KRAFT HAD HANDCUFFS TO PUT ON ME. I TOLD HER I DIDN'T HAVE TO WEAR HANDCUFFS AND THAT I NEVER HAD BEFORE ON A VISIT. I TOLD HER CO BODIEN told me not to let them put handcuffs on me for a visit. She put the handcuffs on anyhow. and told me to take it up with the OIC. We RAN INTO the OIC on the way to the elevator where I BROUGHT this to his attention. I said I never wore handcuffs before to visit and CO. KRAFT said I WAS a liar because she had taken me before and I said she has not. she told me to GO back to my cell and the 3 of us headed to my cell. OIC Buchanan said to wear the cuffs and to Go to my visit I asked if someone else could take me. He said no. I said ok and Kraft + I walked back to the elevator. nothing was SAID until we got into the elevator when CO KRAFT said before you opened your big mouth I was Going to say. Then I interrupted and SAID Don't speak to me. She tried to continue and I repeated myself. She said no you are going to listen and I said you can talk but I am not going to listen Co KRAFT then instructed me to get the Fuck out of the elevator, that I wasn't getting a visit. I said you don't need to talk to me like that and why am i not getting A visit I didn't do anything wrong she then called for backup on her radio. Co. Mason arrived and asked what was going on I continued to repeat myself saying that I told her not to talk to me Thats when she grabbed me by the handcuffs and pulled me out of the elevator. She Pushed me on the

***NOTICE***
Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the third degree if he/she makes a written false statement which he/she does not believe to be true.

| 10. SIGNATURE [signature]  VCP 000000291 | Date: 14 MAY 05 |

☐ WITNESS
☐ VICTIM

## Venango County Sheriff's Office
## STATEMENT FORM

**1. Name** JENNIFER FEDOREK

**2. Incident No.:** 50-489-05

**3. Address:** 108 CLEARFIELD ST. OIL CITY PA 16301

**Telephone:** (814) 677-5339

**4. Location:** Venango Co. Booking

**5. Date/Day** 14 MAY 05

**6. Time:** 1917 hrs

**7. Officer's Name/Signature/Badge No.:**

**8. Page No. - Initials:** 2/2 JFU

**9. Statement:**

way back to my cell. She told me to stand at my cell door. And for some reason as I was standing at my cell door she threw me from the cell door to the counter where I scraped my arms against the counter. I went in my cell and asked if I was going to get my visit. I asked for the handcuffs to be taken off and she said she would get to it when she felt like it. She radioed that I refused my visit. I said I did not and that was the last I seen of her. Co Mason took my cuffs off through the pie hole. Co Struthers was at the end of the hall when she threw me to the counter. My cell inmate Sheila Kizer witnessed her bring me back from the elevator both times, she heard what was going on outside our cell and seen her throw me to the counter. I asked to go to the hospital and was told I didn't need to go. I am also asking to file a grievance but I haven't heard anything yet.

**\*NOTICE\***
Under Section 4904 of the Pa. Crimes Code, Unsworn falsification to authorities, a person commits a misdemeanor of the third degree if he/she makes a written false statement which he/she does not believe to be true.

VCP 000000292

**10. SIGNATURE:**

**Date:** 14 MAY 05

EXHIBIT H

Medical
Intake
Record

INMATE NAME: Fednak Jennifer

| DATE | |
|------|---|
| 3-4-05 | c/o waking up ⓧ x's ̄c chest pain. States is frequently tearful. BP 122/88 AP88 + reg. R 16 Lungs clear & cough. Allowed to vent feelings. has 9 month old baby @ home + is having difficulty ̄c separation. Will place on list for psych. |

5-16-05  See incident reports dated 5/14 + 5/15. Has bruises on wrists + also a bruise on ↑ Ⓡ arm. States she can not move Ⓡ wrist. Will have xray done. Also very upset. Allowed to vent feelings for aprox 20 min. Did calm down. States psych. med — Cympalta helps but would like to talk to Psych Dr. to counselor. Will place on list.

VCP 000000238

Initial Psychiatric
Evaluation

Exhibit Q

**Assessment:**

Lady who spoke impulsively when feeling very frustrated and & angry & this suicidal verbalization there was not based on intent nor plan

**Diagnosis:**

Not a threat to self now —
I A, PTSD hx
GAD
# + Borderline P.D. A
Dysthymic D/O

**Plan/Recommendations:**

① D/C suicide Precautions and allow inmate back in orange garb.

Physician's Signature _____    Date: 1/27/05
Program Nurse Review _____    Date: _____

Exibit R

See Reverse Side for Verifying Signatures

PROCTOSOL HC CRE 2.5%
APPLY AS
NEEDED     Ro#:1613 3/4/05
Rx:56291

3-4-05

*ANORECTAL AGENTS*

TELL, BRADLEY - (814) 676-5444
Pts:
DOB:                    Adm: 03/04/2005        Allergies: NKA
lt: FEDOREK, JENNIFER         NS: VCJ      Room:        ID: FEDOJ

VENANGO COUNTY JAIL

05/01/2005

VCP 000000270

*Exibit S*

**DAILY LOG**
**VENANGO COUNTY PRISON**

POPULATION: (178/140)                    PAGE – 1

DATE: 14AY05                    SHIFT: 1500-2300 hrs.

REPORT PREPARED BY: _____ #99 _____ CO Buchanan #75
                              C.O. MASON                    OIC

ON DUTY:    OIC C.O. BUCHANAN, C.O.'S STRUTHERS, MASON, CRAFT, ANDRES,
            CLELAND, CURL, DOLAN.

TIME:       REMARKS:

1450 hrs.   COMMITTED BROWN ELVIS – By Judge White – BENCH WARRANT
            (Fail to Comply with Court Order) – CR 429-01 OTN H157001-5
                                                                    (179/141)

1500 hrs.   HEAD COUNT COMPLETE – ALL INMATES ACCOUNTED FOR.

NOTE:       ALL KEYS ACCOUNTED FOR ACCEPT #56, #46, & #21

1535 hrs.   RELEASED HOFFMAN JOHN C. – By D.J. Fish – BAIL POSTED
            CR 77-05 OTN L238625-2                                  (178/140)

1615 hrs.   C.O. Emick called off for 0700-1500hrs.15MAY05.

1630 hrs.   C.O. HUNTER OFF DUTY.

1638 hrs.   Inmate C. Yurkanin in from work release. Wearing the same clothes as when he left.
            Stripped by C.O.'s Buchanan and Mason.

1644 hrs.   Inmate B. Ace in from work release. Wearing the same clothes as when he left. Stripped
            by C.O.'s Struthers and Buchanan.

1758 hrs.   Inmate M. Kistler in from work release. Wearing the same clothes as when he left.
            Stripped by C.O.'s Struthers and Mason.

1800 hrs.   Kitchen crew returned to G2. Stripped by C.O.'s Struthers and Buchanan.

1853 hrs.   Inmate D. Williams in from work release. Wearing the same clothes as when he left.
            Stripped by C.O.'s Struthers and Dolan.

1857 hrs.   Inmate R. Montgomery in from work release. Wearing the same clothes as when he left.
            Stripped by C.O.'s Struthers and Dolan.

| | |
|---|---|
| 1853 hrs. | Inmate D. Williams in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Struthers and Dolan. |
| 1944 hrs. | Inmate M. Masters in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Buchanan and Mason. |
| 2000 hrs. | Inmate D. Williams in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Struthers and Dolan. |
| 2020 hrs. | Inmate G. Goodman in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Struthers and Mason. |
| 2130 hrs. | Inmate M. Redfield in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Struthers and Dolan. |
| 2156 hrs. | Inmate D. Wyant in from work release. Wearing the same clothes as when he left. Stripped by C.O.'s Struthers and Dolan. |
| 2220 hrs. | Inmate Carr out to UPMC with C.O. Struthers and Cleland. |
| NOTE: | ADDITIONAL CHARGES MCMILLEN-JASON – By D.J. Martin – Driving While Suspended (3cts), Bad Checks(9cts) – COLLATERAL $3,000.00 – Hearing to be scheduled – TR 367, 369, 398-05, NT 38, 39-01, NT 859, 860, 863, 1087, 1181, 1182-00 |
| NOTE: | MISCONDUCT WRITTEN AND SERVED ON INMATE J. FEDOREK. |
| NOTE: | INCIDENT WRITTEN ON INMATE J. FEDOREK. |
| NOTE: | MEDICAL INCIDENT WRITTEN ON INMATE J. FEDOREK. |
| NOTE: | MEDICAL INCIDENT WRITTEN ON INMATE G. KISTLER |
| NOTE: | MEDICAL INCIDENT WRITTEN ON INMATE M. CARR. |
| NOTE: | BOOKED: BROWN, ELVIS                    05-0515 |
| NOTE: | REC YARD:<br>F-BLOCK     ( 1715 -1825 INDOOR) SCHRUM, WEAVER, WHITE, GREEN<br>B-BLOCK     (1835 -2045 INDOOR) DARICK, SLOAN, HIBBARD, BARTHEN, STAHLMAN |
| 2245 hrs. | ALL INMATES LOCKED DOWN – ALL INMATES ACCOUNTED FOR. |
| 2300 hrs. | OIC C.O. BUCHANAN, C.O.'S STRUTHERS, MASON, CRAFT, ANDRES, CLELAND, CURL, DOLAN OFF DUTY. |

POPULATION: (178/140)

7/6/2006

*Exibit T*

**Inmate Housing Snapshot Report**
**Venango County Prison**

Today's Date: 07/05/2006
Snapshot Date: 05/14/2005

| Section | Cell | Bed | Lastname | First Name | Middle | Affix | Booking# | Location |
|---|---|---|---|---|---|---|---|---|
| A-LOWER | | A | | | | | | |
| | 101 | A | STEFANS | MICHAEL | THOMAS | | 05-0463 | MAIN |
| | 101 | B | SHIELDS | WALTER | H. | | 05-0451 | MAIN |
| | 102 | A | KING | EDWARD | W | JR. | 04-0748 | MAIN |
| | 102 | B | STROTMAN | SHANE | S. | JR. | 05-0497 | MAIN |
| | 103 | A | PATTERSON | HAYNE | A | | 05-0222 | MAIN |
| | 103 | B | BUTLER | RICHARD | WILLIAM | | 05-0507 | MAIN |
| | 104 | A | MCMILLEN | JASON | A. | | 05-0491 | MAIN |
| | 104 | B | WIERBINSKI | SHAWN | W. | | 05-0450 | MAIN |
| | 105 | A | BRECK | JERRY | R | III | 05-0250 | MAIN |
| | 105 | B | RUTH | THOMAS | D | | 05-0211 | MAIN |
| | 106 | B | BEACH | KENNETH | WALTER | JR. | 04-0847 | MAIN |
| | 107 | A | BROWN | ELVIS | LUTHER | | 05-0515 | MAIN |
| | 107 | B | EMICK | MATTHEW | | | 05-0436 | MAIN |
| | 108 | A | BAKER | CURT | D. | | 05-0332 | MAIN |
| | 108 | B | FERGUSON | SEAN | P. | | 05-0263 | MAIN |
| A-UPPER | | A | | | | | | |
| | 201 | A | MCCLOUD | CLIFTON | | | 04-0463 | MAIN |
| | 201 | B | SCHMIDT | ALBERT | | IV | 05-0199 | MAIN |
| | 202 | A | PETERSON | TODD | R. | SR | 05-0482 | MAIN |
| | 203 | A | KOZEK | BRIAN | L | | 05-0385 | MAIN |
| | 203 | B | DEETER | BRADLEY | ALAN | | 05-0413 | MAIN |
| | 204 | A | HORNER | DENNIS | NORMAN | | 05-0480 | MAIN |
| | 204 | B | VOGAN | SCOTT | DONALD | | 05-0377 | MAIN |
| | 205 | A | CAMPBELL | JOSHUA | A. | | 05-0136 | MAIN |
| | 206 | A | SHADERLINE | ROBERT | TAYLOR | | 05-0235 | MAIN |
| | 206 | B | TUCKER | JAMES | L | JR. | 05-0138 | MAIN |
| | 207 | B | PEEVEY | RANDALL | AARON | | 04-1225 | MAIN |

VCP 000000171

* report only includes occupied beds. Also Inmates with no housing assignment are printed first.

# Inmate Housing Snapshot Report
## Venango County Prison

Today's Date: 07/05/2006
Snapshot Date: 05/14/2005

| Section | Cell | Block | Bed | Lastname | First Name | Middle | Affix | Booking# | Location |
|---------|------|-------|-----|----------|-----------|--------|-------|----------|----------|
| A-UPPER | | A | | | | | | | |
| | 208 | | A | WRIGHT | ANTOINE | FORREST | | 05-0003 | MAIN |
| | 208 | | B | MARTIN | CEDIS | | | 05-0173 | MAIN |
| B-LOWER | | B | | | | | | | |
| | 109 | | A | HARTLE | WILLIAM | DALE | | 05-0510 | MAIN |
| | 110 | | A | DEETER | THEODORE | R. | SR | 05-0400 | MAIN |
| | 110 | | B | LOLL | DANIEL | M. | | 05-0370 | MAIN |
| | 111 | | A | TODD | RYAN | JOSHUA | | 05-0504 | MAIN |
| | 111 | | B | SLOAN | BRIAN | EDWARD | | 05-0505 | MAIN |
| | 112 | | A | ROYAL | RICHARD | A | JR | 04-1368 | MAIN |
| | 112 | | B | RECTOR | MARQUIS | K. | | 05-0206 | MAIN |
| | 113 | | A | ZELENKOV | JOVAN | | | 05-0501 | MAIN |
| | 113 | | B | PORATH | DONALD | J | | 05-0424 | MAIN |
| | 114 | | A | YOUNG | EUGENE | | JR | 05-0280 | MAIN |
| | 114 | | B | LUKTISCH | MICHAEL | JOHN | | 04-1085 | MAIN |
| | 115 | | A | FOCHT | WILLIAM | R. | | 05-0405 | MAIN |
| | 115 | | B | WALTERS | GEORGE | OSCAR | JR | 05-0151 | MAIN |
| | 116 | | A | MCQUADE | JEREMY | D. | | 05-0194 | MAIN |
| | 116 | | B | KISTLER | GREGORY | A. | | 05-0230 | MAIN |
| B-UPPER | | B | | | | | | | |
| | 209 | | A | WILSON | TYRIK | ROLAND | | 05-0004 | MAIN |
| | 209 | | B | SCOTT | ANTHONY | L | | 05-0244 | MAIN |
| | 210 | | A | CLARK | SHAWN | M | | 05-0511 | MAIN |
| | 210 | | B | DARICK | MICHAEL | BAINES | | 04-1332 | MAIN |
| | 211 | | A | WIKE | JACOB | K. | | 04-1319 | MAIN |
| | 211 | | B | LINDAMOOD | MYLES | C | | 05-0509 | MAIN |
| | 212 | | A | REDFIELD | MARK | D | | 05-0366 | MAIN |
| | 213 | | A | HIBBARD | KEVIN | M | | 05-0184 | MAIN |
| | 214 | | A | WOODCOCK | ALLEN | L | | 04-1073 | MAIN |
| | 214 | | B | ADAMS | SHAWN | E | | 05-0478 | MAIN |
| | 215 | | A | WELKER | JOSEPH | ROSS | | 05-0072 | MAIN |
| | 215 | | B | BARTHEN | TROY | R. | | 05-0327 | MAIN |
| | 216 | | A | BUCK | JOHN | L. | | 05-0116 | MAIN |
| | 216 | | B | STAHLMAN | MARC | J | | 05-0440 | MAIN |
| BUTLER CO. | | BUTLER CO. | | | | | | | |
| | 1 | | 1 | TRAUGER | JAMES | P | | 05-0059 | MAIN |

* report only includes occupied beds. Also Inmates with no housing assignment are printed first.

VCP 000000172

# Inmate Housing Snapshot Report
## Venango County Prison

Today's Date: 07/05/2006
Snapshot Date: 05/14/2005

| Section | Cell | Block | Bed | Lastname | First Name | Middle | Affix | Booking# | Location |
|---|---|---|---|---|---|---|---|---|---|
| C-LOWER | | C | | | | | | | |
| | 120 | | A | MCVAY | DANIEL | A. | | 05-0231 | MAIN |
| | 121 | | A | SHAFFER | WADE | H. | JR | 04-0820 | MAIN |
| | 122 | | B | NORCROSS | DAVID | BRUCE | | 04-1224 | MAIN |
| | 123 | | A | JOHNSON | EUGENE | C. | JR | 04-0856 | MAIN |
| CRAWFORD CO. | | CRAWFORD | | | | | | | |
| | 1 | | 1 | RAY | CODY | T. | | 04-1393 | MAIN |
| C-UPPER | | C | | | | | | | |
| | 220 | | B | BLACK | TRACIE | LEE | | 03-1057 | MAIN |
| | 222 | | A | BERRY | DEMONTE | | | 05-0172 | MAIN |
| | | D | | | | | | | |
| | 124 | | A | SUTTON | KAREN | L | | 05-0391 | MAIN |
| | 124 | | B | BELL | SHANNON | C | | 05-0453 | MAIN |
| | 125 | | A | FULMER | KIMBERLY | D. | | 05-0414 | MAIN |
| | 125 | | B | BLACK | JENNIFER | LYNN | | 05-0272 | MAIN |
| | | E | | | | | | | |
| | 126 | | A | CARR | MARK | LESTER | | 05-0403 | MAIN |
| | 126 | | B | RAGER | BEN | ALAN | | 05-0441 | MAIN |
| | 127 | | A | BETTELLI | ROBERT | ALLEN | | 05-0290 | MAIN |
| | 127 | | B | WALKER | ELDRED | TED | | 04-0726 | MAIN |
| ERIE COUNTY | | ERIE | | | | | | | |
| | 1 | | 1 | DEMBINSKI | MICHAEL | J. | | 05-0157 | MAIN |
| | 2 | | 2 | MACARTHUR | WILLIAM | J | | 05-0289 | MAIN |
| F-LOWER | | F | | | | | | | |
| | 128 | | A | WHITE | DEMTRI | M | | 05-0243 | MAIN |
| | 129 | | A | ARMSTRONG | ROBERT | LEE | | 04-1330 | MAIN |
| | 130 | | A | BLESSING | DALE | E | | 05-0276 | MAIN |
| | 131 | | A | BLAKE | DONALD | H | SR | 05-0489 | MAIN |
| | 131 | | B | GREENE | ROBERT | SHAWN | | 05-0033 | MAIN |
| F-UPPER | | F | | | | | | | |
| | 228 | | A | WEAVER | HAROLD | R | | 05-0407 | MAIN |
| | 229 | | A | TROUP | HAROLD | D | | 05-0060 | MAIN |
| | 229 | | B | SCHRUM | CHAD | E | | 05-0092 | MAIN |
| | 230 | | A | RESINGER | SCOTT | A | | 04-0843 | MAIN |
| | 231 | | B | CONCEPCION | RAFAEL | A | JR | 05-0428 | MAIN |

* report only includes occupied beds. Also Inmates with no housing assignment are printed first.

# Inmate Housing Snapshot Report
## Venango County Prison

Today's Date: 07/05/2006
Snapshot Date: 05/14/2005

| Section | Cell | Block | Bed | Lastname | First Name | Middle | Affix | Booking# | Location |
|---|---|---|---|---|---|---|---|---|---|
| HOLDING | | H | | | | | | | |
| | 1 | | 1 | SMITH | DEREK | G | | 05-0444 | MAIN |
| | 1 | | 1 | RAGER | BEN | ALAN | | 05-0441 | MAIN |
| | 1 | | 2 | BLYMILLER | MICHAEL | J | | 05-0512 | MAIN |
| | 2 | | 2 | KIZER | SHEILA | MARIE | | 04-1081 | MAIN |
| | 2 | | 3 | FEDOREK | JENNIFER | A | | 04-1326 | MAIN |
| | 3 | | 1 | BLYMILLER | MICHAEL | J | | 05-0512 | MAIN |
| | 3 | | 2 | BEACH | PAUL | A | | 05-0514 | MAIN |
| | 3 | | 3 | HANNA | KATHLEEN | S | | 04-1353 | MAIN |
| | 4 | | 1 | SMITH | DEREK | G | | 05-0444 | MAIN |
| | 4 | | 1 | HANNA | KATHLEEN | S | | 04-1353 | MAIN |
| HOUSE ARREST | | HA | | | | | | | |
| | A | | 1 | HARTZELL | RICHARD | CARL | | 04-1404 | MAIN |
| | A | | 10 | MCCORMICK | CARRIE | ANN | | 05-0228 | MAIN |
| | A | | 11 | WAGNER | ALAN | R | | 05-0087 | MAIN |
| | A | | 12 | DEETER | MICHAEL | P. | | 05-0331 | MAIN |
| | A | | 14 | BROWN | VIOLET | M. | | 05-0496 | MAIN |
| | A | | 15 | HOOVER | RICHARD | G. | | 04-1034 | MAIN |
| | A | | 16 | RITHMAN | CHARLES | D | JR | 04-0381 | MAIN |
| | A | | 17 | RUPERT | JASON | S | | 04-1314 | MAIN |
| | A | | 18 | BLAEDE | PATRICIA | L | | 05-0156 | MAIN |
| | A | | 19 | CARD | ROY | ALVIN | | 04-0943 | MAIN |
| | A | | 2 | ATTLEBERGER | WILLIAM | W. | JR | 05-0481 | MAIN |
| | A | | 20 | ROSE | KATHY | J | | 05-0210 | MAIN |
| | A | | 21 | GALL | JODIE | M | | 05-0376 | MAIN |
| | A | | 22 | FEELY | JEFFREY | S. | SR. | 05-0139 | MAIN |
| | A | | 23 | LEWIS | BRENDA | | | 05-0180 | MAIN |
| | A | | 24 | DENT | MARCI | L. | | 04-1338 | MAIN |
| | A | | 25 | ADAMS | BENJAMIN | H | | 05-0399 | MAIN |
| | A | | 26 | DALE | NATHAN | D. | I | 04-1379 | MAIN |
| | A | | 27 | GARREN | KENNETH | W. | SR. | 05-0232 | MAIN |
| | A | | 28 | PARKER | JACKIE | LEE | | 04-1407 | MAIN |
| | A | | 29 | HUTCHINSON | ERIC | DANIEL | | 05-0352 | MAIN |
| | A | | 3 | HEETER | CHRISTOPHER | A | | 05-0291 | MAIN |
| | A | | 30 | SHIREY | CHRISTEN | J. | | 04-0280 | MAIN |
| | A | | 31 | WINGER | WILLIAM | M | | 05-0350 | MAIN |
| | A | | 32 | STEPHENS | ROBERT | A. | | 05-0409 | MAIN |

* report only includes occupied beds. Also Inmates with no housing assignment are printed first.

# Inmate Housing Snapshot Report
## Venango County Prison

Today's Date: 07/05/2006
Snapshot Date: 05/14/2005

| Section | Cell | Bed | Block | Lastname | First Name | Middle | Affix | Booking# | Location |
|---|---|---|---|---|---|---|---|---|---|
| HOUSE ARREST | | | HA | | | | | | |
| | A | 33 | | REDMOND | MICHAEL | E. | | 05-0085 | MAIN |
| | A | 35 | | BAKER | THOMAS | K. | JR | 05-0271 | MAIN |
| | A | 35 | | BAKER | THOMAS | K. | JR | 05-0271 | MAIN |
| | A | 39 | | SMITH | MARY | SPECHT | | 05-0203 | MAIN |
| | A | 47 | | GRINDER | DONALD | E. | | 05-0213 | MAIN |
| | A | 5 | | EMICK | MICHAEL | L. | | 04-0712 | MAIN |
| LAWRENCE CO. | 1 | 1 | LAWRENCE | KOPF | RANDY | L | | 05-0198 | MAIN |
| OTHER | 1 | 1 | OTHER | MASTERS | MICHAEL | ANDREW | | 05-0435 | MAIN |
| VCP STOREROOM | | | W | | | | | | |
| | A | 1 | | GOLD | KYLIE | A | | 05-0506 | MAIN |
| | A | 10 | | HEDGLIN | TONYA | MARIE | | 05-0462 | MAIN |
| LOWER | | | W | | | | | | |
| | 151 | A | | LAWSON | KIMBERLY | A | | 05-0349 | MAIN |
| | 151 | B | | HARTON | NANETTE | M | | 05-0260 | MAIN |
| | 152 | A | | FINCH | RUTH | A | | 05-0503 | MAIN |
| | 152 | B | | CHLUDZINSKI | REBECCA | ANN | | 04-1406 | MAIN |
| | 153 | A | | EISMONT | TINA | M | | 04-1385 | MAIN |
| | 153 | B | | FOX | STACY | L. | | 05-0170 | MAIN |
| | 154 | A | | MULLEN | APRIL | A. | | 04-1269 | MAIN |
| | 154 | B | | MCGINNIS | SARA | RENEE | | 05-0109 | MAIN |
| WORK RELEASE | | | Gi | | | | | | |
| | WR | A | | GOODMAN | GARY | WAYNE | | 05-0205 | MAIN |
| | WR | C | | KISTLER | MARK | A. | | 05-0485 | MAIN |
| | WR | F | | SWEETAPPLE | PAUL | JAMES | | 05-0337 | MAIN |
| | WR | G | | ZINZ | ADAM | RYAN | | 05-0097 | MAIN |
| | WR | H | | YURKANIN | COREY | ALAN | | 05-0236 | MAIN |
| | WR | I | | BLUM | JOSHUA | C | | 05-0193 | MAIN |
| | WR | J | | WASSIL | LAWRENCE | LEE | | 05-0330 | MAIN |
| | WR | K | | WILLIAMS | DOUGLAS | H | | 05-0460 | MAIN |
| | WR | L | | REDFIELD | MARK | D | II | 05-0140 | MAIN |
| | WR | N | | ROLAND | JOHN | W | | 05-0410 | MAIN |
| | WR | P | | LAWALL | JACOB | JOHN | | 05-0287 | MAIN |
| | WR | Q | | FREEMAN | GLENN | E | | 05-0351 | MAIN |
| | WR | R | | MONTGOMERY | ROBERT | L | | 05-0195 | MAIN |

report only includes occupied beds. Also Inmates with no housing assignment are printed first

VCP 000000175

Inmate Housing Snapshot Report
Venango County Prison

Today's Date: 07/05/006
Snapshot Date: 05/14/2005

| Section | Cell | Bed | Block | Lastname | First Name | Middle | Affix | Booking# | Location |
|---|---|---|---|---|---|---|---|---|---|
| WORK RELEASE | | | G1 | | | | | | |
| | WR | S | | WYANT | DAVID | E | | 05-0189 | MAIN |
| | WR | T | | MASTERS | MICHAEL | ANDREW | | 05-0435 | MAIN |
| | WR | U | | SMITH | KENNETH | D | | 05-0484 | MAIN |
| WORK RELEASE | | | G2 | | | | | | |
| | WR | C | | FOSTER | JASON | A. | | 05-0137 | MAIN |
| | WR | D | | KUNEY | ROBERT | ALLEN | | 04-1042 | MAIN |
| | WR | E | | SAYERS | JOSEPH | M. | | 05-0319 | MAIN |
| | WR | F | | MALONE | RANDY | J. | | 05-0169 | MAIN |
| | WR | G | | MCCLINTOCK | DONALD | EUGENE | JR | 05-0316 | MAIN |
| | WR | I | | MAY | JAMES | R. | | 05-0498 | MAIN |
| | WR | J | | BAKER | BRENT | A. | | 05-0486 | MAIN |
| | WR | K | | FRIDLEY | JEFFERY | L | | 04-1092 | MAIN |
| | WR | L | | PARK | AARON | CHRISTOPHER | | 05-0458 | MAIN |
| | WR | M | | CARTER | EDMUND | F. | JR. | 05-0026 | MAIN |
| | WR | N | | DONALDSON | ERIC | CHARLES | | 05-0363 | MAIN |
| | WR | O | | BASHAW | ARTHUR | F. | III | 05-0423 | MAIN |
| | WR | Q | | BARGER | JUSTIN | P | | 05-0341 | MAIN |
| | WR | R | | ACE | BENJAMIN | T | | 05-0464 | MAIN |
| | WR | S | | SOKOL | JOHNNY | R. | | 05-0408 | MAIN |
| | WR | T | | QUIGLEY | JASON | R. | | 05-0396 | MAIN |
| | WR | V | | KUNSELMAN | HUGH | M. | | 04-0821 | MAIN |
| | WR | W | | JOHNSON | KURT | A. | | 05-0047 | MAIN |
| | WR | Y | | WAGNER | LEON | P. | JR. | 05-0500 | MAIN |
| WOMEN | | | | | | | | | |
| | 251 | A | | CALLAHAN | CAROLYN | ELAINE | | 05-0202 | MAIN |
| | 251 | B | | SHAFFER | TINA | L | | 05-0381 | MAIN |
| | 252 | A | | MILLER | ALLISON | N | | 05-0270 | MAIN |
| | 252 | B | | FULKERSON | KRISTEN | L | | 05-0247 | MAIN |
| | 253 | A | | SHEATS | KELLY | MARIE | | 04-1057 | MAIN |
| | 253 | B | | CALDWELL | ANGELA | LANII | | 05-0296 | MAIN |
| | 254 | A | | BROWN | KELLY | ANN | | 05-0207 | MAIN |
| | 254 | B | | CAROLUS | DENISE | M | | 05-0502 | MAIN |

* report only includes occupied beds. Also Inmates with no housing assignment are printed first.

Exibit U

# Post Orders

A - block
B - block
C - block
D - block        ( females )
E - block
F - block
W - block        ( females )

Central Control
1st Floor Control
Receiving
Records / Booking
Recreation
School / Mail
Sergeants & Corporal
Support
Transport
Visitation

* also housing inmates :
   G1 - block
   G2 - block
   Holding cells

## Post Orders   Exibit V

A-block
B-block
D-block
E-block
F-block
w-block

- Ensure adequate cleaning supplies and hygiene items are available
- Ensure that inmates are fed, showered and ready for court or transfer to another institution
- Supervise and control all inmate behavior on the housing unit
- Supervise inmate workers, meals and use of the telephone
- Inspect all cells for cleanliness, excess property and other violations
- First and second shift officers search at least five cells for contraband. Third shift officer search at least two cells for contraband
- Conduct searches of all inmates entering or leaving the housing unit
- Ensure that all schedules are properly posted
- Only food items purchased in commissary will be permitted in cells
- Submit work orders/e-mail to maintenance for repairs needed
- Laundry will be done in accordance with the procedure
- Control television use
- Ensure that all inmates being released take all prison property to Intake Area.
- In the event of an emergency, the block officer is to notify the shift commander
- Remain on post at all times until properly relieved
- Assign and maintain a current list of unit workers
- Inmates will be property clothed while in the housing unit (This includes shirt, pants, socks and shoes/shower sandals.)
- Assume control of the block, receive all keys and equipment
- Maintain running log on all activities in block; complete before going off duty
- Perform at least three (3) cell shakedowns daily and log cell numbers searched
- Conduct pat searches
- Conduct medication call
- Supervise food line and service during meals
- Read previous shift's logs and reports
- Collect/distribute request forms and mail
- Ensure the safety and security of all inmates in your block or custody
- Distribute commissary, toilet paper, soap, etc.
- Maintain inventory of supplies
- Answer phone and radio
- Respond to informal inmate grievances
- Assist during institutional shakedowns
- Assist with medical emergencies
- Distribute/collect inmate razors
- Process and computerize new commitments
- Check all incoming property for contraband
- Document ongoing significant behavior observations
- Control inmates by order and command

Created 11/9/2004

# VENANGO COUNTY

7/6/2006

- Maintain logs on Observation Cells
- All reports submitted must be typed
- Complete Extraordinary Reports on all incidences
- Complete Misconduct Reports on all incidences
- Clean work stations as needed
- Check the computer for inmate charges, court dates and cash balances
- Report any maintenance problems
- Immediately report any security problems
- Inspect after maintenance has been working in the jail
- Mediate dispute between the inmates
- Direct new incoming inmates to cells or other areas
- Explain rules and regulations to new inmates
- Ensure new inmates receive an Inmate Handbook
- Search inmates when moving from one block to another area
- Direct all inmate movement during an emergency
- Complete security checks with no more than 30 minute intervals
- Responsible for all inmate behavior and safety
- Log and complete reports on all inmate refusals to eat
- Provide cleaning supplies for inmates
- Direct and supervise inmate cleaning
- Inspect cells daily, enforce organization, cleanliness and removal of contraband
- Maintain security of all doors
- Operate all doors within the block
- Ensure doors operate correctly
- Keep all doors clear and free of interfering obstacles
- Check all equipment and report any problems
- Relay request for counselor on emergency basis
- Notify kitchen staff of any discrepancies
- Monitor and control all inmate movement
- Ensure all inmates wear proper fitting uniforms
- Ensure all inmates have the appropriate issued bedding, towels, etc.
- Replace and report all damaged county property
- Inspect the cells of outgoing inmates for damages and property left behind
- Log disciplinary warnings
- Call support officer for extra help as needed
- Brief the incoming shift

113

- Receive briefing from the outgoing shift supervisor
- Ensure that all operational procedures and programs are implemented in an orderly, timely and proper manner
- Ensure that staffing is adequate to meet security and operational needs
- Perform at least one perimeter check per shift; take corrective action, if necessary
- Perform at least one security round per shift; take corrective action if necessary
- Perform special assignments or other duties as required by supervisors
- Replace vacancies on the staff schedule as necessary for call offs, excused absences, and unexcused absences
- Assume command in the absence of superiors
- Approve or disapprove of the use of force on an inmate if situation allows
- Supervise the use of force when possible
- Supervise the use of restraints
- Review, investigate, and sign misconduct reports; forward the reports and the results to the disciplinary hearing board
- Ensure the proper use of equipment and facility property by staff and inmates
- Ensure that head counts, shakedowns and emergency drills are conducted as scheduled
- Ensure that all inmates are ready to view arraignment and sentence tapes prior to their hearings
- Directly supervise correctional officers
- Responsible for the security of the general population and the work release area
- Responsible for all inmates, including their behavior and safety
- Supervise the commitment and release process of all inmates
- Check all staff logs and reports
- Complete an evidence report upon the discovery of contraband
- Secure all contraband
- Coordinate and facilitate all work details via the administration
- Remain updated about training materials and improved methods of operations
- Prepare training materials and needs
- Supervise the training programs at the facility and promote the exchange of training ideas and methods
- Supervise Work Release inmates
- Coordinate work/employment site checks on inmates
- Receive briefing from outgoing Sergeant/Corporal
- Conduct roll call with all correctional officers prior to start of shift
- Coordinate and assign staff personnel duty assignments

Created 11/9/2004                    128

7/

EXDH W

# Inmate Grievance

### Do not write in this Block

Grievance Number: 55-0516 (Assigned by Prison Administration)

Date Received: 16 MAY 05

Grievance Classification: (Assigned by O.I.C.)

☐ Informal          ☑ Standard          ☐ Emergency

Inmate's Name: Jennifer Fedorek          Date: 5/15/05

Date of Occurrence: 5/14/05

Incident or Complaint:

With an incident that occurred on 5/14/05
Cr draft used obscene language (Co mason
to wit) and unnecessary force (Co mason,
Struther, inmate Kizer to wit) on me.
See also: Sheriff's report

Relief or Remedy Sought:

I dont ever want to see her again. I wouldn't
leave her alone in an elevator w/an inmate
but as far as others go...
I think she needs training on how to handle
situations as a CO not a police officer and
some time off w/o pay to think about what
she done and to cool off wouldn't hurt.

By signing this form, you are stating that the information above is true and correct. You also understand that if
the information is found to be false, you may be subject to disciplinary action.

Signed: Jennifer Fedorek

Initial Action Taken:

Given to Deputy Warden Sobowsky.
Sgt. McKen #13

C.O. Wirtner #57          Sgt. McKen #13

Officer receiving grievance          Officer in Charge

EXIBIT X

72

# Inmate Grievance Response

Grievance Number: _55-0516_

Date Received: _5-12-2005_

Grievance Classification:

☒ Informal          ☐ Standard          ☐ Emergency

Grievance Response:

☒ Step One          ☐ Step Two          ☐ Step Three

Inmate's Name: _FEDOREK JENNIFER_

Date of Occurrence: _05-14-2005_

Grievance: _Obscene Language, unnecossary force_

Action Taken:

_the Chief Deputy Warden or the Warden will look into the entire incident. Any action that maybe taken will be the private concerns of the Venango County Prison and it's management._

If you are not satisfied with the action taken at Steps One or Two, you may appeal the decision.  Step Three is with the Warden and his decision is final.

Grievance Committee:

_MBLabrask_

Date: _5-27-05_

A Copy of the Original Grievance must be attached.

EXIBH Y

# COUNTY OF VENANGO

## Disciplinary Review Board Hearing Report

| Number | Name | Misconduct Date | Misconduct Time |
|---|---|---|---|
| 05-051-4210 | Fedorok Jennifer | 5-14-05 | 1555 Hrs |

| INMATE PLEA | ☐ Guilty ☒ Not Guilty ☐ No Plea ☐ Other | VERDICT | ☒ Guilty ☐ Not Guilty | Hearing Date 5-18-05 | Hearing Time 1050 Hrs |
|---|---|---|---|---|---|

## Hearing Action

- ☐ Dismiss the Charge (s)
- ☐ Reprimand
- ☐ Administrative Custody-Close
- ☐ Administrative Custody Maximum
- ☐ Privilege Restriction (s)
- ☐ Suspend W/R Status
- ☐ Revoke W/R Status

- ☐ Disciplinary Custody-Close
- ☐ Disciplinary Custody Maximum
- ☐ Change Living Quarters
- ☐ Restriction to Quarters
- ☐ Probationary Period
- ☐ Transfer Recommendation
- ☒ Other

### Use space below to indicate details of fact and action taken

Inmate Continued in Hold Cell
found Guilty of Refusing To Obey

Will Appeal

## Disposition of Other Inmates Involved

| | | |
|---|---|---|
| ☒ Yes ☐ No | The inmate has heard the decision and has been told the reason for it and what will happen |
| ☒ Yes ☐ No | The circumstances of the charge have been read and fully explained to the inmate |
| ☒ Yes ☐ No | The opportunity to have the inmate's version reported as part of the record was given |
| ☒ Yes ☐ No | The inmate has been informed that he may appeal the Board's decision |

**Board Members Present**

CO Taylor #041

Review Board Report and all appended information must be signed.
Signature indicates finished report with appendices.

/Signature of Review Board Chairman

Signature of Person preparing Report    VCP 000000283

# COUNTY OF VENAN

| Misconduct Hearing Appeal | Rec'd 19MAY05 | Exibit |
|---|---|---|

| Number | Name | |
|---|---|---|
| 05-0514210 | Jennifer Fedorek | Z |

I was found guilty of misconduct 05-0514210 on 5-14-05 (date) by the Disciplinary Review Board and I wish to appeal that decision on the following grounds:

Check Area(s) Involved

☑ a.  The procedures employed were contrary to law

☐ b.  The punishment is disproportionate to the offense

☐ c.  The evidence was insufficient to support the decision

Below is a brief statement of the facts relevant to my claim(s). It includes the identity of all persons who may have information which may be helpful in resolving this matter.

On the first 2 pgs. CO Andres signed as ranking CO on duty. She then signed as the person serving notice on the following 2 pgs.?

I also don't feel I was refusing to obey an order because there was so much commotion and inconsistency in procedures.

ST #
41
1154ttes.

EXHIBIT AA

# COUNTY OF VENA

**Type of Review**
☒ Misconduct Appeal ☐ Periodic Review ☐ Other

| Number | Name | | Date |
|---|---|---|---|
| 05-0514710 | JENNIFER, FEDOREK | 14 May 05 | 18 May 05 |

**REVIEW, DECISION AND RATIONALE**

AFTER FURTHER REVIEW OF YOUR Misconduct,
I SEE NO REASON TO REVERSE THEIR DECISION,
THE FACT THAT THE SIGNING WAS IN THE WRONG
PLACE, does NOT CHANGE THE FACT THAT YOU WERE!
ACTING OUT WHAT YOU WANTED TO DO OR NOT TO DO.
WHICH IS UNACCEPTABLE, THE CORRECT NAMES ARE
ON THE misconduct,

APPEAL DENIED

**DECISION RELATIVE TO DISCIPLINARY REVIEW BOARD**

☐ Not Applicable ☐ Sustain ☐ Sustain-Amend
☐ Refer for Further Study ☐ Exonerate Inmate

| Signature | DATE |
|---|---|
| C.D.W. FX-Lyle | 24 May 05 |

VCP 000000284

*Exibit BB*

*Employee Personnel manual*

# ORGANIZATIONAL STAFFING OF VENANGO COUNTY PRISON

Board of Inspections

Warden

Deputy Warden(s)

Administrative Assistant

Secretary / Clerical Staff - Kitchen Staff - Correctional Staff · Maintenance Staff


## ORGANIZATIONAL POSITIONS AT THE PRISON

It is the policy of the Venango County Prison to maintain a current organizational chart that reflects accurately its place within the organizational structure of the Warden's Office, and to maintain job descriptions of all positions maintained and used throughout the operation of the County Prison.

These job descriptions are on file and copies are contained in the Appendix of the Policy and Procedures   Manual.

Institutional Management
As prescribed by law the fundamental responsibility of institutional management is to secure custody and control of inmates.  Although such a concept may seem at variance with attempts to introduce rehabilitative services, it is doubtful that any correctional program, which ignores this reality, will be effective.  These measure are designed to protect and to provide a safe environment for inmates as well as for staff.  Actually, services and facilities for rehabilitative treatment can operate only in a climate where control is constant and consist.

The institution is operated with a chain of command. The Warden is in charge of the entire Prison operation.   The Deputy Wardens are in charge of and responsible for the physical operation of the Prison and any day-to-day matters pertaining to the operation of the Prison.

**The Warden of this institution extends an open-door policy to any employee at any time for any problems or concerns.**

Created 11/9/2004                          6

1/6/2006

Case 1:05-cv-00186-SJM-SPB Document 34 Filed 10/16/2006 Page 45 of 55

5.   Officers must be courteous at all times to the public, coworkers and to the inmates. Profanity shall not be used.

6.   Corrections Officers are never to strike an inmate except in self-defense. In carrying out any disciplinary transfer, Corrections Officers will use only enough force as needed to accomplish their duties. If decent and humane treatment is ensured the inmate, disciplinary action will be reduced to a minimum.

7.   Officers will not accept money from any inmate for any reason whatsoever. Corrections Officers are not permitted to accept any gift or borrow anything such as candy from an inmate for any reason.

8.   Officers are not permitted to bring any contraband on prison property or within the building. Also, no toilet articles, recreation material, clothing, or any other article that can be received through the regular procedures will be allowed to be provided by a Corrections Officer. The Warden or his designee must grant any exception to this ruling.

9.   Officers shall not recommend any bondsman or attorney to any inmate, nor will any officers get involved with the legal aspects of an inmate's case. Any problems concerning legal work, attorneys, bail, court or hearings will be referred to the appropriate staff by means of an Inmate Request Slip. Once the request is submitted, officers should not call to expedite the request except in an emergency.

10.  Officers are not permitted to make outside contacts as a favor to inmates, whether on or off the prison property. Officers are not permitted to transmit any written messages to or from the inmate.

11.  Officers are required to read and understand the Inmate Handbook.

12.  Gambling is prohibited; any officer who has reason to suspect that gambling is taking place will take any necessary action to confiscate the article(s) or device being used and report the names and occurrences to the supervisor on duty.

13.  Officers are required to read and understand all post orders covering their assignments. Any questions or requests on rulings on any problems are to be made known to a supervisor on duty.

14.  No notices, bulletins or other material shall be posted at any place without the approval of the Warden.

Created 11/9/2004                                    9

VCP 000000023

7/6/2006

# SECURITY-GENERAL REGULATIONS FOR VENANGO COUNTY

## Staff

1. Sufficient Correctional Officers shall be present in the Prison, awake and alert.
2. Appropriate numbers of female Correctional Officers shall be present in the Prison complex at all times while female inmates are confined.
3. The male officers may enter the female block for emergencies or to assist the Female Correctional officer, but only in a Female Correctional Officer's presence.

## Inmates

1. Inmates are not permitted to assume any authority whatsoever over other inmates, or assist in cell searches.
2. Inmates assigned as trustees shall be supervised.
3. If any inmate leaves the prison for any reason, they shall be thoroughly searched upon their arrival back into the institution.
4. All admissions shall be searched according to the Strip Search policy.
5. Inmates with detainers or pre-trial can be assigned to trustee status only if authorized by the Warden or Deputy Warden, and the prison staff must be notified of their status.
6. Inmates for outside work details must have the approval of the Warden and/or Deputy Warden, and the prison staff shall be notified of the inmate's status.

## Weapons

1. Weapons shall not be carried inside the Prison during normal operations. Outside security assignments may be an exception; and must be authorized by the Warden or Deputy Warden.
2. There are weapon security lockers located inside the control room for those law enforcement officers and prison officials carrying weapons. All weapons are stored in a locked room.
4. Any use of a weapon upon any inmate shall be reported on an Extraordinary Occurrence Report.

Created 11/9/2004                                    13

7/6/2006

# CONTROL ROOM OPERATIONS

POLICY
It is the policy of the Venango County Prison to maintain secure Control Centers that serves as the Communications and movement control hub for the entire Prison.

The Control Centers are the hub of all external and internal security and communication activity.   It will not ordinarily serve as a decision-making or command post, nor will weapons be stored there.   The Warden or Deputy Warden will ensure that operations of the Control Centers be carried out in accordance with all applicable policies, procedures and regulations.

PROCEDURE
An officer will be assigned to the Control Rooms around the clock or as designated by the Warden.

The Control Officer will remain in the Control Room with all doors securely locked.

All Officers must be familiar with admission and release procedures and all policies in the operating manual.

The Control Rooms will not be left unattended at any time.   A relief officer will be assigned during break and lunch periods.   The radio and telephone are to be answered promptly and courteously at all times.

Access to the Control Centers will be limited to those staff and contract employees who have official duties to conduct in this area.   No one will be permitted to enter the Control Center unless the Control Center Officer is personally aware of their identify or can obtain positive verification of their identify and the purpose for which they are to be admitted.   Access by non-Prison employees must be approved by the Warden or Deputy Warden.

When a disturbance occurs anywhere within the Prison, the Control Center ordinarily will be the first post notified.   The Officer on duty there will immediately notify the Officer in Charge of the situation and then notify the Warden and if necessary, the Franklin Police Department and/or the Venango County Sheriffs Department.

The Control Center Officer will maintain logs and records of counts, alarms, visitors, key inventories, equipment inventories and equipment tests.

Created 11/9/2004                                45

VCP 000000059

/6/2006

**Various levels of forces follow:**

**Pepper Mace**
Officers who have been trained in the use of Pepper Mace may use Pepper Mace to subdue an inmate who will not respond to verbal orders and can be used prior to an officer using physical force to get an inmate to comply to an order. An officer will not carry pepper Mace, unless there is a possibility for the application of the mace. The mace shall be kept in the control room at all times unless directed by the Officer in Charge to carry the mace, or the officer is entering the cell block to suppress a disturbance. After the use of Pepper Mace on an inmate, the inmate(s) will be allowed to clean themselves up after the situation is under control.

**Direct Contact Force**
The first level of force available to staff is the use of direct contact force. Physical handling is justified to subdue unruly Inmates; to separate participants in a fight; in self-defense; and in defending staff, Inmates, or other persons. It may also be used to move Inmates who fail to comply with lawful orders. As with any type of force the amount of force used in direct contact will be only as much as is needed to bring the Inmate to compliance with staff orders.

**Batons**
When the degree of force that can be applied by direct contact alone is inadequate, staff may exert additional force. Batons may be used to separate fighting Inmates or to quell other types of violence. Ordinarily, staff will not carry batons during the course of their duties. A supply of batons will be maintained in the Armory for issue on the authorization of the Shift Supervisor and/or Warden.

**Restraints**
The use of restraint equipment is intended to prevent escape, assault, or the commission of some other offense by violent or disruptive Inmates; to protect staff and Inmates and under circumstances, approved by the Warden. Line staff ordinarily will not carry restraint equipment.

Inmates in locked housing will be in restraints when moved out of their cells for any purpose; staff in those units may carry handcuffs, with appropriate controls on the handling of the cuff keys.

For Inmates in general population units, the use of restraints to control behavior is authorized only when all other reasonable methods have failed. An Inmate may be restrained to the restraint chair, only with the Warden or Deputy Warden's approval, when the inmate's behavior is so violent and dangerous to others when unrestrained as to constitute a serious risk to the institution's security and good order. In such cases, specific procedures require that the inmate is under constant supervision by a Corrections Officer

Created 11/9/2004                                    47

/6/2006

Firearms will not be issued except under the direction and order of the warden or Deputy Warden.

Firearms will be used ONLY in situations in which there is danger of death or grievous bodily harm and will not be discharged if less extreme measures will suffice, except in escape situations.  An officer may fire under the following circumstances:

- At an Inmate or other person whom the officer has seen kill or seriously injure another person and who refuses to halt when ordered.
- At an escaping Inmate, if the escape is actually in progress and can not be reasonably prevented in a less forceful manner
- At an Inmate or other person carrying a weapon or attempting to obtain a weapon by force, if the officer has reason to believe that individual intends to cause death or serious injury.
- To protect property in cases such as arson, when the act is likely to cause serious injury or death.

**Verbal warnings must be used prior to the use of firearms.**

Staff members fired on by an Inmate or non-Inmate may return fire, taking into account the safety of noncombatants in the vicinity.  Staff using deadly force will use all possible caution when in the proximity of civilians or when a fired shot may carry to an inhabited area.  Only weapons-authorized staff may draw or be authorized to use firearms in the course of their duties.   Each such staff member will be issued a weapons card specifying the weapons that the individual is qualified to use and be issued.

Reporting Requirements
   The Prison Warden will be immediately notified when any type of force is used, including an accidental weapon discharge.   A written report prepared by the officer involved will be completed no later than the conclusion of that shift and filed with the Prison Warden.  The report will include the following:
- an account of the events leading to the use of force
- an accurate description of the incident and reasons for using force a description of the weapon or device used, if any, and the manner in which it was used description of the injuries suffered, if any and the treatment given or received; reports of all injuries will be filed in the Inmate's central file and the employee's personnel record.
- a list of all participants and witnesses to the incident
- a copy of all incident reports compiled as a result of the incident.

Created 11/9/2004                     49

_____ 7/6/2006

*Employee*
*Personnel*
*Manual*

# USE OF FORCE AND RESTRAINTS

POLICY

It is the policy of the Venango County Prison to provide its employees with proper training and guidance on the permissible use of force and to ensure that force is only used when necessary and only to the degree necessary to subdue an individual Inmate or restore order to a disruptive group. Deadly force may be used to prevent an escape, protect the public, or protect other lives when other available measures are insufficient for that purpose. The use of force, security equipment and restraint equipment is intended only as a control measure when absolutely necessary--these measures are not intended and will not be used as a means of punishment.

There is an essential area of judgment in the use of reasonable force by the Correctional Officer. Generally, however, use of force is justified in the following situations:

1.    To protect yourself or someone else
2.    To prevent inmate from hurting himself
3.    To prevent destruction of property
4.    To prevent escape
5.    To enforce the institutional rules and regulations

If at all possible, try to talk an inmate out of the cell rather than using force. If it becomes necessary to use force in either placing an inmate in or removing him from his cell, every effort should be made to have a supervisor present. If force cannot be avoided, the following should be observed:

1.    Try to determine if the inmate has a weapon before entering the cell.
2.    Use only enough controlling force to get the job done.
3.    If use of some sort of physical force appears to be necessary, the correctional officer must first carefully assess the situation in terms of factors, such as: How big, violent and powerful is the inmate? Is he armed? What is his mental state? If physical force then appears to have a reasonable prospect of success, an appropriate amount should be applied before the officer resorts to use of baton or body shield.
4.    Don't attempt to remove an inmate from a cell by yourself. At least two (2) correctional officers will be involved in the use of force.

Various methods (shield, mattress, etc.) May be used for removing an inmate from a cell. The officer should be familiar with any devices such as a shield that may be used in the removal process.

Created 11/9/2004                    46

———7/6/2006   

# GENERAL PERSONNEL ORDERS AND STANDARDS OF CONDUCT

It is the general policy of the Venango County Prison to protect the rights of all employees and enforce high standards of professional conduct from all employees. While satisfactory adherence to a Code of Conduct is primarily the employee's responsibility, Prison and County Management will review these standards and expectations with employees at orientation and from time to time during reinforcement training and performance evaluations.

Venango County Prison subscribes to the Professional Code of Ethics of the American Correctional Association, a copy of which is located in the Appendix of this Manual, and expects its employees to follow the ethical standards embodies therein. In addition, the Prison's standards of Professional Conduct include, but are not limited to, compliance with the following elements:

- All Prison policies, procedures and directions
- Restrictions on any employee using his/her official position to gain any personal advantage for another, in any improper or unauthorized manner or engaging in conduct that constitutes or gives rise to the appearance of a conflict of interest.
- Restrictions on the possession of firearms on duty. Written authorization is required before bringing a weapon or other item considered security equipment onto property managed by the Prison, or while performing duties on behalf of the Venango County Prison. This restriction includes weapons and security equipment, even though such items may be locked in the employee's personal vehicle.
- A Prohibition on the use of abusive or obscene language, threats and coercion.
- Restrictions on the Use of Force. Inmates will not be subjected to sexual, emotional or physical abuse or the use of unnecessary levels of force. (See Policy on Use of Force).
- Enforcement of an attitude of respect for and protection of Inmates' rights.
- Adherence to requirements for timely attendance
- Respect for property rights and a prohibition on the unauthorized use, theft, misuse or waste of property belonging to the Prison, an Inmate, an employee or a visitor.
- Assurance of safety and security as a part of effective job performance. Employees will remain alert and will be aware of and responsive to their surroundings while on duty. Acts that jeopardize the security of a facility or the health, safety or welfare of Inmates, staff or visitors and acts that are unresponsive to Inmate needs are prohibited.
- Remaining on assigned posts. Employees will obtain proper authorization before leaving a work post or the Prison itself.

Created 11/9/2004                                7

*Employee
Personnel
Manual*

# RIOTS, HOSTAGES, AND DISRUPTIVE BEHAVIOR

It is the policy of the Venango County Prison that there shall be no negotiation until the institution is brought under control and hostages, if any, released. Furthermore, any employee taken as a hostage loses his rank, identity and authority as an official while being held as a hostage. Any orders or requests made by such hostage will not be recognized nor acted upon by other staff.

The following management strategies will reduce the tensions and misunderstandings that can lead to riots:

- Sound communication between management staff and line employees regarding prison operations.
- Good communication between staff and Inmates concerning plan, programs and procedures
- A high level of supervisory accessibility and visibility on the part of the Warden, Deputy Warden and Shift Supervisors.
- Prompt reporting systems that keep supervisors informed of unrest in the Prison
- Constructive activities and recreation programs for Inmates
- A well-designed classification system that enables Inmates to live in relative safety and prevents the emergence of and assumption of power by Inmate gangs, pressure groups, or other disruptive elements
- Fair and impartial treatment of Inmates.

The Central Control is the designated point of notification in the event of any disturbance. This notification may come by radio, telephone, intercoms, personal body alarm or even by direct observation by the Central Control officer. Once a disturbance has begun or if conditions indicate an imminent disturbance, immediate steps must be taken to keep the trouble localized, reduce Inmate access to other areas and cut off any avenues of escape. Thus, the next step is to close the corridor and housing unit doors and then immediately notify staff in other areas to secure their portion of the Prison and the Inmates in that area. Supervisory personnel will also be notified immediately.

Created 11/9/2004                        58

7/6/2006    *Employee*
*Personnel*
*Manual*

# INMATE GRIEVANCE PROCEDURE

It is the policy of Venango County Prison to provide all inmates with an internal grievance procedure for resolving complaints arising from institutional matters, so as to reduce the need for litigation and afford staff the opportunity to improve prison operations.

The grievance procedure is designed to supplement, but not replace, the informal communication process via the Inmate Request form.

## Procedures

An inmate may file a grievance at any time to bring a problem to the staff's attention, or to appeal a specific action such as a disciplinary sanction. An inmate may file a grievance only for him or herself, although an inmate may assist another inmate in filing a grievance.

A grievance may be initiated for an alleged violation of civil, constitutional or statutory rights or of policy; an alleged criminal or prohibited act by a staff member; to resolve a condition existing within the Prison that creates unsafe or unsanitary living conditions.

- Only one grievance may be filed at any one time on a single incident or item of concern.
- An inmate may withdraw a previously filed grievance at any time.
- No staff member may retaliate against an inmate filing or withdrawing a grievance.
- An inappropriately filed grievance or one that concerns a nongrievable issue will be returned to the inmate.

## Grievance Classifications

Grievances will be classified as either an informal, standard, or emergency grievance.

### Informal:

An inmate may voice an informal grievance to any staff member at any time utilizing the Inmate Request Form. When presented with an informal grievance, that staff member may initiate corrective action, if the action is within the normal scope of his/her responsibility. However, if an inmate voices a grievance to a staff member that is beyond the scope of that employee's authority and appears to require prompt attention, that person will notify the Officer in Charge of the grievance as soon as practical.

The Officer in Charge, when advised of an inmate's informal grievance, may at their own discretion attempt to resolve the matter or have the inmate initiate a standard grievance.

Created 11/9/2004                    85

**Standard:**

Any time within five (5) days after a potentially grievable event has occurred, an inmate may file a formal, written grievance. The inmate will be provided with a grievance form by a staff member. The staff member will instruct the inmate on the basic requirements for completing the form if the inmate so requests. The staff member will accept the written and completed form from the inmate and forward to the Officer in Charge, who may again attempt an informal resolution. However, if not resolved informally within 48 hours, the Officer in Charge will refer the issue to the Deputy Warden of Treatment for a review of prison policies and procedures to determine if any have been violated.

The Deputy Warden of Treatment may seek to remedy the grievance within seven (7) days through an informal resolution in which both parties agree verbally on a remedy or through a formal resolution in which all remedies and dispositions are proposed in written form, with copies to the inmate, Inmate's file, and Warden. The record of the final written formal resolution will be returned to the inmate within thirty (30) days of receipt.

**Emergency:**

Emergency grievances are those involving an immediate threat to the welfare or safety of an inmate. Processing for emergency grievances will begin with the initial determination by the receiving staff member that the issue raised is life-threatening. Emergency grievances may be given directly to the Officer in Charge by an inmate. If the Officer in Charge determines the grievance is an emergency matter, it will be given immediate attention. If resolved at the shift level, a report will be prepared by that supervisor for the Warden, describing the nature of the problem and the resolution achieved. Emergency grievances that cannot be resolved at the shift level will be channeled, without delay, through the chain of command until reaching a level where action can be taken. If after consideration, the Officer in Charge determines the matter is not an emergency issue, standard processing will apply.

**Grievance Committee**

In the event a grievance can not be resolved to the inmate's satisfaction by the Deputy Warden of Treatment within seven (7) days. A Grievance Committee will be convened to resolve the issue. The Grievance Committee will consist of, but is not limited to, the Chief Deputy Warden, a District Justice, and one Correctional Officer not involved in the matter being grieved. The inmate may appear before the Grievance Committee to present the case. The Committee will review all facts discovered in the investigation and any additional information presented by the inmate in person and will make a decision within five business (5) days.

**Appeals of Grievance Committee Decisions**

Inmates who are dissatisfied with the resolution of a grievance by the Grievance Committee will have five (5) working days after receipt of the

7/6/2006

notice of decision to appeal to the Prison Warden. The Warden will have
ten (10) working days to make a determination on the appeal and to reply
to the inmate. The reply will be in writing, and the inmate will sign to
indicate he/she has received notification of the appeal decision.

**The Warden's decision as to the inmate grievances will be final.**


# INMATE CORRESPONDENCE/PUBLICATION POLICY

Inmates upon commitment, are given materials to write home; they also
have access to the public telephone. Incoming mail is examined for
contraband; outgoing mail is checked to see if it is addressed to another
institution. Also, there is a written statement in the Inmate Handbook
explaining the acceptance of incoming publications and any criteria used
for deciding whether or not to accept it. (Also refer to Section II.13 #28E
for more information in Incoming Publications).

Mail Privileges
The policy of Venango County Prison is to maximize the communication
between family, relatives and friends of inmates concerned with the overall
program of the individual inmate. This is essential to the rehabilitation
process in terms of morale, maintenance of family ties and reintegration
into the community.

1. All inmates shall be permitted to correspond with friends, family
members, attorneys, legitimate business contacts and public
officials.

   Incoming mail shall not be read, censored, or reproduced except:
   It shall be opened and examined for contraband. Money orders,
   certified checks, or cash shall be recorded, indicating the nature or
   receipt, the sender, the amount received, and the date. Personal
   checks will be returned to the sender. The institution will not be
   responsible for cash sent through the mail. The inmates shall be
   notified of all monies received. Letters containing contraband shall
   be held for further inspection and disposition by the Warden or
   Deputy Warden.

2. There shall be no limit to the number of correspondence received.
3. Restrictions:
   a. Correspondence with victims of the inmate's criminal acts
   will not be permitted, except upon special approval of the
   Warden and may be opened and inspected.
   b. Correspondence containing libelous, or obscene material as
   well as correspondence containing criminal solicitations or
   furthering a criminal plan is prohibited.

Created 11/9/2004                87