IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER ANN FEDOREK,<br>　　　　Plaintiff,<br>　　v.<br><br>WARDEN RONALD SNYDER, et al.,<br>　　　　Defendants. | C.A. No. 05-186 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that Defendant Craft's motion for summary judgment [Document # 45] be granted.

**II.   REPORT**

　　**A.   Relevant Procedural History**

On June 15, 2005, Plaintiff Jennifer Ann Fedorek, a former pretrial detainee at the Venango County Prison, filed this civil rights action pursuant to 42 U.S.C. § 1983. Originally named as Defendants were: Ronald Snyder, Warden of the Venango County Prison; and Keoke Craft, Corrections Officer at the Venango County Prison. In her complaint, Plaintiff alleges that Defendant Craft "used unnecessary force and created her own procedure in prison" and Defendant Snyder "agreed upon the standards of my living situation and did not enforce any consistancy [sic] in the rules and regulations," in violation of her constitutional rights. (Complaint at Section IV.C). As relief, Plaintiff seeks compensatory damages in the amount of $ 160,000.00.

On March 7, 2006, Defendant Snyder filed a motion to dismiss and strike [Document # 18], contending that (I) Defendant Snyder should be dismissed from this action because Plaintiff has failed to allege his personal involvement in the alleged constitutional violations,

and (ii) Plaintiff's claim for a specific amount of compensatory damages should be stricken.[1] This motion was ultimately granted by Memorandum Order of District Judge Sean J. McLaughlin, dated November 21, 2006, and Defendant Snyder was dismissed from this case.[2]

Defendant Craft has now filed a motion for summary judgment seeking dismissal of Plaintiff's claim against her based upon Plaintiff's failure to exhaust her administrative remedies. [Document # 45]. Despite being given ample time to do so, Plaintiff has failed to file a response to Defendant Craft's motion. This matter is now ripe for consideration.

### B.    Relevant Factual History

In May 2005, Plaintiff was being held as a pretrial detainee in the Venango County Prison, where she alleges she was placed in segregation without explanation. On May 14, 2005, Plaintiff alleges that Defendant Craft placed her in handcuffs and escorted her from "segregation" to the prison's visitation area to see a visitor. Plaintiff claims that she had never been required to wear handcuffs during an escort to the visitation area and, as a result, an argument ensued between her and Defendant Craft. Plaintiff alleges that, during the escort, Defendant Craft yelled at her, insisted that she continue to wear handcuffs during the visit, and, at various times, "yank[ed]" on the handcuffs, "pinched the back of [her] arm," and "threw [her] into the receiving desk." (Complaint at Section IV.C). Defendant Craft then refused to allow Plaintiff to attend the visit and placed her back in segregation without removing the handcuffs. As a result of Defendant Craft's actions, Plaintiff claims she suffered "swelling and bruises on [her] wrists." (Id.).

---

[1] Even though Defendants' motion to dismiss was purportedly filed on behalf of both Defendants, the only claims sought to be dismissed were those brought against Defendant Snyder. As a result, Defendants' motion was more properly characterized as a partial motion to dismiss filed on behalf of only Defendant Snyder.

[2] Plaintiff's claim for monetary damages in the specified amount of $ 160,000.00 was also stricken by Judge McLaughlin's Order.

### C. Standards of Review

#### 1. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

#### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim

3

if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiffs are *pro se* litigants, this Court will consider facts and make inferences where it is appropriate.

### D. Exhaustion
#### 1. The Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144

4

(1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2. The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

In this case, the Venango County Prison ("VCP") has a prison grievance policy included in its Inmate Handbook, a copy of which is provided to each inmate upon her admission to the facility. (See Verification of Michael Sabousky, Deputy Warden at VCP, attached to Document # 50, Appendix, at p. 41, ¶ 6). According to this policy, an inmate may file a formal, written grievance at any time within five (5) days after a "potentially grievable event" has occurred, which is forwarded to the officer in charge. (See Document # 51, Appendix, at pp. 11-12). The officer in charge may then attempt to informally resolve the grievance within 48 hours. If an informal resolution is not reached, the officer in charge will forward the grievance to the Deputy Warden of Treatment. (See Document # 51, Appendix, at p. 12). If the grievance cannot be resolved to the inmate's satisfaction by the Deputy Warden of Treatment within seven (7) days, a Grievance Committee is convened to resolve the issue, before which the inmate may appear to present his case. (Id.). If the inmate is dissatisfied with the Grievance Committee's resolution of the grievance, he may appeal to the prison Warden within five (5) working days after his receipt of the Committee's decision. The Warden then has ten (10) working days to decide the appeal,

---

[4] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

which decision is final. (Id.).

### 3.   Exhaustion and Procedural Default Applied

Defendant Craft argues that Plaintiff has failed to exhaust her administrative remedies in accordance with VCP's grievance policy. In support of this argument, Defendant points to Plaintiff's deposition, during which Plaintiff acknowledged that she completed only the first step of the grievance process. (Document # 50, Appendix, pp. 1-6). Thus, it is clear from the record that Plaintiff has failed to exhaust her administrative remedies with regard to the claims at issue in this case. Moreover, in light of the fact that the challenged events took place on May 14, 2005, Plaintiff has undoubtedly procedurally defaulted on her claims. Accordingly, Plaintiff's claims are not properly before this Court and should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant Craft's motion for summary judgment [Document # 45] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated:  April 7, 2008